UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN DOE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 14-cv-30114-MGM |
| AMHERST COLLEGE, CAROLYN | * | |
| MARTIN, SUZANNE COFFEY, ALLEN | * | |
| HART, FRANCES TULEJA, LAURIE | * | |
| FRANKL, and SUSIE MITTON | * | |
| SHANNON, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR

TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

(Dkt. No. 6)

July 28, 2014

MASTROIANNI, U.S.D.J.

This action came before the Court on Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction. (Dkt. No. 6). For the reasons set forth below, the motion is treated as one for preliminary injunction and is DENIED.

I.   **Background**[1]

In the fall of 2009, the plaintiff, who brought this case under the pseudonym John Doe,[2] traveled from his native South Africa to begin his undergraduate studies at Amherst College ("the College"), the institutional defendant in this case. During his first two semesters, plaintiff was involved in three incidents during which his actions may have violated the College's written honor code. One incident, which occurred in December 2009, involved plaintiff's roommate, referred to in the pleadings as Student A.[3] Student A has alleged that Doe raped him. Doe maintains the encounter was consensual.

Within hours of the alleged rape, Student A reported the incident to the College's Area Coordinator for Resident Life Services and LGBTQ liaison. Student A withdrew from the College several weeks later. He returned and completed the fall 2010 semester and then permanently withdrew from the College early in the spring 2011 semester.

While the alleged incident occurred in 2009, the College first began a formal process to determine culpability in May 2014.[4] Plaintiff did meet with a number of the College's employees, both before and after the alleged rape, to discuss his behavior and personal issues. In March of 2010, plaintiff left the College on what was designated as a medical withdrawal. Under terms outlined in a letter plaintiff received from the College shortly after his departure from the campus, he was required to remain away from the campus for at least one full semester and was required to complete certain steps prior to being permitted to reenroll at the College.

In January 2011, plaintiff returned to campus and agreed to abide by the terms of a "behavioral contract" drafted by the College. Following his return to the College, plaintiff did well academically, was involved in student activities and began working for the admissions office. During his senior year he was awarded a one-year fellowship to work in the admissions office full-time following his anticipated graduation in May 2014. Plaintiff

---

[1] Though the parties disagree about the meaning and significance of various facts, they generally agree as to the timeline of communications and events. The Court limits its account here to those areas about which the parties agree.
[2] The Court entered a temporary order allowing plaintiff to proceed under pseudonym until further order of the Court or until the parties reach an alternative agreement (Dkt. No. 31).
[3] The parties have informed the Court of an agreement to keep the identities of both Student A and the plaintiff confidential.
[4] It appears that neither local nor state law enforcement agencies, nor the Northwest District Attorney's Office, was notified of the allegations, accordingly no state court criminal proceedings were considered.

applied for, and was granted, permission to remain in the United States and to work in his field of study for one additional year.

Student A, who had permanently withdrawn from the College in 2011, contacted the College in early May of 2014 regarding plaintiff's receipt of the admissions office fellowship and the handling of the 2009 incident. On May 16, 2014, Doe was notified that the College was initiating a formal investigation and disciplinary proceeding with respect to the December 2009 incident. Though he had completed all necessary coursework, Doe was not permitted to participate in graduation exercises, did not receive his diploma, and had his admissions office fellowship rescinded. The College scheduled a formal hearing before the College's Sexual Misconduct Hearing Board, which was to begin as early as July 11, 2014. Plaintiff filed this action on June 24, 2014, setting forth ten counts against the College and various individual defendants. Plaintiff's claims fall in three general categories, breach of contract, discrimination, and infliction of emotional distress.

Plaintiff filed his Motion for Temporary Restraining Order and/or Preliminary Injunction at the same time that he filed his complaint. In his Motion, plaintiff asks the Court to order the College (1) to cease the disciplinary action commenced against plaintiff in May 2014 and (2) to award plaintiff his degree. Plaintiff seeks this relief solely based on the strength of his breach of contract claim against the College (Count 1).

## II.     Legal Standard

"A preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right." Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 8-9 (1st Cir. 2012). To obtain a preliminary injunction, plaintiff must establish that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of a preliminary injunction; (3) the balance of hardships tips in the plaintiff's favor and (4) public interest favors an injunction. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

3

### III. Analysis

Courts reviewing requests for preliminary injunctions generally begin the analysis with the first factor, likelihood of success on the merits, recognizing that "if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002). It is equally true, however, that if the moving party cannot demonstrate that he is likely to suffer irreparable harm in the absence of a preliminary injunction, the remaining factors become matters of idle curiosity. See Winter, 555 U.S. at 22. With this in mind, the Court begins its analysis with the second factor – the likelihood of substantial and immediate irreparable harm, for which there is no adequate remedy at law. Joyce v. Town of Dennis, 720 F.3d 12, 26 (1st Cir. 2013).

The plaintiff identifies as "imminent harms," that will occur without injunctive relief: (1) the personal strain, embarrassment and ordeal of having to participate in the adjudication, (2) homelessness, (3) unemployment, and (4) deportation. The Court addresses each concern in turn.

A. Emotional Stress

Plaintiff urges the court to view the anxiety and strain plaintiff has experienced since the College recently initiated a complaint against him with respect to the 2009 incident, as irreparable consequences similar to the harms created when "a state attempts to administer a second punishment for the same offense." (Dkt. No. 12, Pl.'s Mot. for TRO and/or Prelim. Inj. at 29.) The Court does not doubt plainitff's current discomfort, but the concerns raised in a contractual dispute between a student and college are quite different than those raised in state criminal proceedings where an individual's liberty is at stake. The emotional harm identified by the plaintiff in this case is not qualitatively different from types of harm that are routinely compensated with monetary awards. In his complaint, plaintiff includes claims for infliction of emotional distress, indicating that he is aware of the legal remedies available to compensate individuals who have endured difficult feelings due to another's wrongful conduct.

4

B. Homelessness

    Plaintiff has managed to house himself since he left the Amherst campus on June 1, 2014 by living with a friend on an informal basis, not unlike many college students and recent graduates. He has not indicated that his current living situation is in more than speculative danger at this time nor has he demonstrated that he would be unable to locate alternative housing should his concerns about his current living situation materialize. The Court cannot find that there is a likelihood of substantial and irreparable harm when a risk remains speculative.

C. Joblessness

    The Court understands that the College's decision to withhold plaintiff's diploma may make it more difficult for plaintiff to find employment, but the harm of lost wages is routinely compensated with monetary awards and, therefore, is not irreparable. See, e.g., Powell v. City of Pittsfield, 221 F.Supp2d. 119 (D. Mass. 2002) (calculating damages due plaintiff for lost wages). The plaintiff's official transcript detailing his course work is currently available to him for employer related inquiries. (Dkt. No. 39, Decl. of Lisa H. Rutherford ¶ 15). Additionally, in the absence of a preliminary injunction, the Court anticipates that the hearing before the Sexual Misconduct Review Board will be convened within a short time and, at its conclusion, the plaintiff may be awarded his degree. The constraints on Plaintiff's ability to pursue legal employment in the United States imposed by Plaintiff's visa status are likely the larger impediment to his ability to find paid employment and this impediment will remain in place whether or not the Court grants plaintiff's Motion.

D. Deportation

    Plaintiff is not a U.S. citizen. He has been residing in the U.S. pursuant to an F-1 student visa. Prior to the inception of this case, plaintiff had applied to extend his F-1 student visa for an additional period of Optional Practical Training ("OPT"). As part of his application for OPT, plaintiff authorized the College to submit information about his

5

application to the U.S. Citizenship and Immigration Services("USCIS"), including that he was applying for permission to work full-time or part-time doing "paralegal work in law firms, administrative work, humanities research, [or] college admissions counseling." Plaintiff's application for OPT was approved by UCSIS on or about June 5, 2014. The rules of the OPT program prohibit participants from having a period of unemployment that exceeds 90 days. Plaintiff's OPT period began on July 1, 2014, less than 30 days ago, leaving him significant time to locate employment that meets the OPT requirements.[5]

Based on information provided to him by the College in an email from its Coordinator for International Student Services dated July 17, 2014, plaintiff has concluded that he is not able to be employed until he gets his degree. The Court understands how plaintiff reached his conclusions, but does not think the email necessarily supports that conclusion. The email contains internal contradictions and it is unclear whether the writer's conclusion that "it does not seem possible for [plaintiff] to be employed" is based on an OPT requirement that plaintiff have a degree or her understanding that it will be difficult for plaintiff to obtain employment if he cannot show transcripts or a degree to potential employers. (Dkt. No. 35, Ex. 1, Email from Nancy Condon, Coord. for Int'l Stud. Serv., Amherst Coll. to Pl. (July 17, 2014).) The College reports that plaintiff can meet the OPT employment requirement even if he is not issued his degree, though it does so without explaining the inconsistency between the information it provided to plaintiff on July 17, 2014 and the information it provided directly to the Court on July 21, 2014.[6] The Court finds the information about the OPT program requirements provided to it directly by the College more reliable than the information provided by the College to the plaintiff. [7] Having concluded that the plaintiff can obtain work that meets the OPT program requirements without first receiving his degree and that plaintiff has more than two months in which to do

---

[5] After instituting the complaint against plaintiff and rescinding the fellowship offer, the College and Plaintiff worked with USCIS to push back plaintiff's OPT start date from June 16, 2014 to July 1, 2014. This made it possible for him to continue working as a student at the College through the end of June and delayed the start of his period of unemployment. Based on the information before the Court, it appears that, should it wish to do so, the College could provide plaintiff with additional work opportunities that would satisfy the requirements of OPT well in advance of the end of the ninety-day limit faced by plaintiff.

[6] Plaintiff's affidavit, to which the July 17, 2014 email from Nancy Condon was attached, was filed with the assent of the College, prior to the Defendants' filing their sur-reply in opposition to the plaintiff's motion for preliminary injunction.

[7] The College supports its conclusion with statements from an attorney who advises colleges and universities, including defendant College, on student visa issues. (Dkt. No. 40, Decl. of Megan E. Kludt.)

so, the Court concludes that plaintiff is not currently facing an imminent risk of violating the terms of his visa, let alone a risk of being deported.

Having concluded that plaintiff has not met his burden of establishing that he is, at this time, likely to suffer irreparable harm in the absence of a preliminary injunction, the Court ends its analysis without consideration of the parties' arguments with respect to likelihood of success on the merits, balance of equities, and public policy. The Court notes that while there exists a general principle that courts should stay out of the academic and disciplinary affairs of colleges, the Court expects the College to conclude its Sexual Misconduct Review Board in an expeditious manner. Schaer v. Brandeis Univ., 432 Mass. 474, 482, 735 N.E.2d 373, 381 (2000).

**IV.  The Motion Will Be Treated as a Motion for Preliminary Injunction**

Plaintiff's motion is entitled Motion for Temporary Restraining Order and/or Preliminary Injunction. This motion was filed prior to plaintiff completing service of his complaint. The Court set the motion for hearing and directed plaintiff to serve defendants. Defendants filed an opposition to plaintiff's motion in advance of the hearing on the motion, both parties presented oral arguments at the hearing, and both parties supplemented their earlier filings after the hearing. As a full adversary hearing has been provided, the Court's order addresses the motion as one for preliminary injunction. See Coal. for Basic Human Needs v. King, 654 F.2d 838, 839 (1st Cir. 1981).

**V.  Conclusion**

For the Foregoing reasons, the motion for a temporary restraining order and/or preliminary injunction is hereby DENIED.

It is So Ordered.

   /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge

7