UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                              )
JOHN DOE,                     )
                              )
    Plaintiff    )        CIVIL ACTION NO.: 3:16cv-30184-MAP
                              )
v.                            )
                              )
WILLIAMS COLLEGE,             )
                              )
    Defendant.            )
_____)

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT ADDITIONAL DEPOSITIONS**

**A. INTRODUCTION**

Plaintiff, John Doe[1], by and through counsel, responds to Defendant's Opposition to Plaintiff's Motion for Leave to Conduct Additional Depositions. (Doc. 105.) Plaintiff re-asserts and re-alleges the statements in its Motion for Leave to Conduct Additional Depositions (Memorandum Incorporated) as if stated herein. (Doc. 101.)

**B. BACKGROUND**

Depositions of Kris Maloney and Danielle Gonzalez were necessary to explore apparent false statements made by Meg Bossong in her affidavit. (Doc. 54.) These two administrators sat next to Brian Marquis, one on each side of him, at the training he attended. (Doc. 58.) As the affidavits of Marquis and Bossong contained diametrically opposed statements, Plaintiff required an exploration of these percipient witnesses. Such depositions were hardly a waste.

Regarding the deposition of President Adam Falk, Defendant expected Plaintiff to rely solely on its representation that Falk had a very limited role in the adjudication of Plaintiff. As Falk was the direct supervisor of the Deans involved in the underlying case at the College, Plaintiff was required

---

[1] [1] Plaintiff refers to himself as "John Doe" throughout the pleadings.

to testify as to his supervision as it related to John and as customary. Plaintiff's counsel maintained that although Falk *may* have played a limited role, his deposition would involve important questions of substance. [*emphasis added*] (Exhibit A.)

    The deposition of Falk addressed several important issues including [*paraphrased herein*]:

1. Whether the highest authority that can act on behalf of the organization, the Board of Trustees, was informed of John's case;

2. Whether John's case was the matter Dean Bolton stated was the matter she described as "a very priority" that she discussed at a Board of Trustees meeting in Spring 2016;

3. The extent to which Falk, to whom the Dean of the College reports, supervised the Deans' administration of John's case; and

4. Whether Falk has the position of highest authority that can act on behalf of the organization.

    As such subjects touch the heart of Plaintiff's negligent supervision of employees claim and are far from irrelevant as Defendant asserts, the deposition was far from a waste of time.

    During all correspondence regarding Plaintiff's plan to conduct a Rule 30(b)(6) deposition up until Plaintiff's February 2018 request of Defendant to agree to exceed the limitation, Defendant's counsel did not disagree to the deposition in principle. In fact, On October 29, 2017, Defendant's counsel tacitly agreed, aside from disagreeing to go beyond the deposition number limitation, to the idea of Plaintiff deposing a Rule 30(b)(6) witness for the College: "You have indeed identified 13 depositions here - assuming your as-yet-unidentified 30(b)(6) topics can be addressed by a single witness." (Id.)

    Further, this statement by Defendant's counsel misrepresents the implication a Rule 30(b)(6) deposition has on the number of depositions. No matter how many topics are included, and no matter how many witnesses the defendant ends up designating, a single notice of deposition under Rule 30(b)(6) counts as one deposition. Fed. R. Civ. P. 30(a)(2)(A) advisory committee's note to 1993 amendment. See also *Quality Aero Tech., Inc., v. Telemetrie Elektronik*, 212 F.R.D. 313, 318 (E.D.N.C. 2002) (noting that Rule 30(b)(6) depositions are counted as a single deposition, regardless

of the number of witnesses designated); *Beaulieu v. Bd. of Trs. of the Univ. of W. Fla.*, No. 3:07cv30, 2007 U.S. Dist. LEXIS 92641 (N.D. Fla. Dec. 18, 2007).

**C. ARGUMENT**

1. <u>LACK OF KNOWLEDGE BY PREVIOUSLY DEPOSED INDIVIDUALS MAKE A RULE 30(B)(6) DEPOSITION NECESSARY</u>.

Plaintiff's draft notice under Federal Rule of Civil Procedure 30(b)(6) ("Rule 30[b][6]") lists "[t]opics on which previously deposed individuals lacked knowledge (TO BE LISTED AT COMPLETION OF ALL OTHER DEPONENTS)" and "Williams College's collection of documents in response to Plaintiff's discovery requests" as subjects on which the organizational representative may be questioned. In its argument that the **draft** proposed topics are irrelevant, Defendant conveniently leaves out the fact that the **draft** Notice lists "Topics on which previously deposed individuals lacked knowledge (TO BE LISTED AT COMPLETION OF ALL OTHER DEPONENTS)." (Doc. 101-2.)

Rule 30(b)(6) was adopted to curb the practice of "bandying" where organizations would produce one deponent after another, each disclaiming knowledge of information that someone in the organization almost certainly knew. *Sigmund v. Starwood Urban Retail VI, LLC*, 236 F.R.D. 43 (D.D.C. 2006) (internal quotations omitted). 1970 Advisory Committee Note. In other words, the *raison d'etre* for Rule 30(b)(6) is to fill in the gaps.

As evidenced in Attachment E to Plaintiff's Motion for Leave to Conduct Additional Depositions (Doc. 101-5), the transmission of the policies to investigator Allyson Kurker remains a hotly contested subject between Plaintiff and Defendant. Defendant has not produced documents containing the College policies sent to Kurker. The same applies to the "refresher training materials" which Plaintiff had to repeatedly request and which, to this date, has not received the complete documents. Bossong testified that she would have compiled training materials for the Hearing Panel in this case "and then the policy definitions are appended to their printed materials, which I do not

compile." The policy definitions that were appended, "attached" to Bossong's materials according to Bossong, have not been produced by Defendant. (Exhibit B.) Bossong changed the subject by answering the question "Who appends them to the material?" with "Allyson Kurker includes them in the cover page of her investigative report." (Id.)

Kurker could not provide information in response to questions regarding how she obtained the policies applicable in this case from the College. She also could not answer the question, "Is it correct that [she] would have had to have received written confirmation of the policies in effect before October 2014 in order to write [the] footnote [in one of her draft reports which stated 'The policy has been effect [sic.] since October 2014. The policy in effect prior to October 2014 defined sexual misconduct in substantially the same manner. The definition of non-consensual sexual intercourse was 'any sexual intercourse (anal, oral or vaginal); however slight; with any object; by any person upon any other person; without effective consent.' The current definition includes sexual penetration by 'any body part.']? (Exhibit C and D.)

Toya Camacho, at Plaintiff's deposition of her on March 1, 2018, stated that she provided Kurker with the College's policies. (Exhibit E.) The parties have not yet received the transcript from this deposition. The College has not produced these communications. The draft Rule 30(b)(6) subject, "Williams College's collection of documents in response to Plaintiff's discovery requests" addresses the absence of these communications from Defendant's productions.

Lastly, other questions remain unanswered, such as why the College allowed a retaliatory counter-complaint against a student by an employee when law, regulation, and College policy does not provide for Title IX adjudications of sexual misconduct complaints by staff against students. (Doc. 76-3 at FN1, p. 33) Title IX protections for employees only involve terms of employment claims against employers as outlined in Subpart E. (Exhibit F.) This issue also implicates inadequate training and supervision of staff, to be discussed below.

2. <u>DEFENDANT'S RESPONSES, OR LACK THEREOF, TO PLAINTIFF'S REQUESTS FOR PRODUCTION AND INTERROGATORIES ON THE ISSUE OF REVISIONS OF POLICIES RELEVANT TO NONCONSENSUAL SEX MAKE A RULE 30(B)(6) DEPOSITION NECESSARY.</u>

As evidenced in Attachment C to Plaintiff's Motion for Leave to Conduct Additional Depositions (Memorandum Incorporated) (Doc. 101-3), over the course of many months, Plaintiff has been trying to elicit information relevant to Plaintiff's claims in the Complaint[2] as recited therein.

The requests for production at issue here include:

- Correspondence including, but not limited to, emails/internal memoranda, relating to revising the section of the 2013-2014 Student Code of Conduct that addresses non-consensual sex and defines consent; the 2014-2015 Student Code of Conduct's definition of consent; the Statement on Sexual Assault and Other Sexual Misconduct effective October 2014; and the 2015-2016 Student Code of Conduct's policy on Rape, Sexual Assault, and Sexual Misconduct;

- Minutes or notes of any meetings devoted, at least in part, to revising the section of the 2013-2014 Student Code of Conduct that addresses non-consensual sex and defines consent; the 2014-2015 Student Code of Conduct's definition of consent; the Statement on Sexual Assault and Other Sexual Misconduct effective October 2014; and the 2015-2016 Student Code of Conduct's policy on Rape, Sexual Assault, and Sexual Misconduct;

- Guidelines, criteria, and/or training materials provided to and/or used by members of the Dean of the College's Office, Title IX Coordinators, and Director of Sexual Assault Prevention and Response from January 1, 2010 to July 15, 2017 to evaluate whether reports of Student Code of Conduct (aka "Student Handbook") violations meet the threshold for initiating a disciplinary process and/**or constitute violations of the Code of Conduct**.

The interrogatories at issue here include:

- Identify all persons – students, faculty, administrators, and/or consultants – who participated in revising the section of the 2013-2014 Student Code of Conduct that addresses non-consensual sex and defines consent; the 2014-2015 Student Code of Conduct's definition of consent; the Statement on Sexual Assault and Other Sexual Misconduct effective October 2014; and the 2015-2016 Student Code of Conduct's policy on Rape, Sexual Assault, and Sexual Misconduct.

---

[2] All references to "the Complaint" are to Plaintiff's 3rd Amended Complaint. (Doc. 76.)

- Identify the dates of any meetings and/or correspondence devoted, at least in part, to making such revisions, and the persons who attended these meetings and/or participated in this correspondence. (Exhibit G.)

Plaintiff believes that, given evidence of Bossong's anti-male bias ["Most people who stalk are male; Women more likely to be stalked by men" (Doc. 54-1 at 5); "hostile masculinity" in her training materials (Exhibit H at 39 and 41); the use of eighteen (18) year old data stating "intoxication provides an excuse for engaging in socially disapproved behaviors, especially for men" (Id. at 56); the use of a video called "The Undetected Rapist," an interview of "Frank", who is an aggregation of several interviews by a sexual assault "expert" whose materials are thirty-two years out of date and is edited to make a point about serial predators not backed by research (Exhibit I) in her trainings; her affinity for radical feminist bell hooks (Exhibit J); her deposition testimony asserting facts not supported at all in the written record that wrongly depict John as an abuser and Smith as a victim (Exhibit K), etc.] combined with her role in drafting College sexual misconduct policy, production of the requested documents may reveal admissible evidence substantiating John's claims gender-based discrimination.

As Defendant has not produced these documents, if they indeed exist, and as Plaintiff has delayed its planned Motion to Compel until it has conducted depositions of Hearing Panelists Steven Klass and Aaron Gordon, Plaintiff intends for the Rule 30(b)(6) subjects to include the revisions of the College policies relevant to sexual misconduct. Relevant questions will also include policy supervision and maintenance. The questions on this subject shall be reasonably calculated to lead to the discovery of admissible evidence relative to Plaintiff's claim that that College erred by "failing to maintain proper policies and procedures designed to fairly, reasonably, and adequately adjudicate claims of sexual misconduct without bias or favor" (Complaint at ¶ 259[f]) and relative to the above-mentioned gender bias more generally.

3. <u>IMPROPER TRAINING, SUPERVISION, ADVISING, AND PROVISION OF TECHNICAL ASSISTANCE TO THE HEARING PANEL AND DEAN IN THIS CASE MAKE A RULE 30(B)(6) DEPOSITION NECESSARY.</u>

Plaintiff's draft Rule 30(b)(6) subjects, "[o]rganizational structure of Williams College" and "Williams College's policies on and practice of hiring, training, and supervising employees," address organizational level failures that led to the improper training, supervision, advising, and provision of technical assistance to the Hearing Panel and Dean in the underlying case. Related questions will include why Bossong, the partial advisor to Susan Smith, the counter complainant College employee, played an integral role to the adjudication process.

The questions on this subject shall be reasonably calculated to lead to the discovery of admissible evidence relative to Plaintiff's claim that that College erred by, "failing to hire well-trained agents and employees;" "failing to train its employees, agents or representatives in the proper method to thoroughly investigate and adjudicate, without bias, complaints of sexual misconduct;" and "failing to supervise its employees, agents, or representatives to ensure complaints of sexual misconduct are adequately investigated and fairly adjudicated." (Complaint at ¶ 259[a], [b], [e].)

WHEREAS, this Court should enter an order granting Plaintiff leave to take twelve (12) total, i.e. two additional, depositions.

Respectfully submitted,

Date: March 11, 2018        **JOHN DOE**
                                       **PLAINTIFF**

By: _____/s/ Stacey Elin Rossi_____
STACEY ELIN ROSSI, BBO# 681084
ROSSI LAW FIRM
berkshirelegal@gmail.com
P.O. Box 442
Hoosick Falls, New York 12090
(413)248-7622

KRISTA A. WROLDSON-MILLER,
BBO# 656381
krista@kristamillerlaw.com

75 North Street, Suite 310<br>
Pittsfield, Massachusetts 01201<br>
(413)499-4166

## CERTIFICATE OF SERVICE

This document was served electronically upon all counsel of record by filing through the ECF system on March 11, 2018.

  /s/ Stacey Elin Rossi_____
STACEY ELIN ROSSI, BBO# 681084
ROSSI LAW FIRM
berkshirelegal@gmail.com
P.O. Box 442
Hoosick Falls, New York 12090
(413)248-7622