UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DOE,<br><br>        Plaintiff<br><br>    v.<br><br>WILLIAMS COLLEGE,<br><br>        Defendant | Civil Action No. 3:16-CV-30184 |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Daryl J. Lapp (BBO No. 554980)
 daryl.lapp@lockelord.com
Elizabeth H. Kelly (BBO No. 672277)
 liz.kelly@lockelord.com
LOCKE LORD LLP
111 Huntington Avenue
Boston, MA 02199
617.230.0100

*Counsel for Williams College*

October 1, 2018

# TABLE OF CONTENTS

**Page(s)**

Argument ................................................................................................................... 1

   I.   The College is Entitled to Summary Judgment on the Gender Discrimination Claims in Counts I and IV .......................................................................................... 1

      A.  Selective Enforcement ........................................................................... 1

      B.  Erroneous Outcome ............................................................................... 2

      C.  Deliberate Indifference ......................................................................... 5

      D.  Retaliation ............................................................................................. 6

  II.  The College is Entitled to Summary Judgment on the Breach of Contract and Fundamental Fairness Claims in Counts II and VI. ............................................. 8

      A.  The Proceedings Were Conducted with Basic Fairness. ....................... 8

      B.  The Panel's Decision Was Not Arbitrary and Capricious. .................. 11

      C.  The College Followed its Policies and Procedures. ............................ 12

          1.  There is no evidence of bias or disparate treatment. ................... 13

          2.  Title IX and College policy called for the investigation of Smith's complaint. .... 14

          3.  The College did not breach any obligation to provide transcripts. ........ 15

          4.  The Panel applied the correct standards in determining whether Doe engaged in nonconsensual sexual intercourse. ................. 16

          5.  The College did not retaliate or facilitate retaliation by adjudicating Smith's complaint. ............................................ 17

          6.  The College did not violate any contractual obligation as to timing. ........ 17

 III.  The College is Entitled to Summary Judgment on Count III – Implied Covenant of Good Faith and Fair Dealing ......................................................................... 18

 IV.  The College is Entitled to Summary Judgment on the Negligence Claim in Count V ..... 18

   V.  Doe Has No Claim for Declaratory or Injunctive Relief .................................. 19

Conclusion ............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Baldwin v. New York State, State Univ. of New York, Coll. at Buffalo,*
  690 F. App'x 694 (2d Cir. 2017) ..............................................7

*Bleiler v. College of Holy Cross,*
  No. 11-11541, 2013 WL 4714340 (D. Mass. Aug. 26, 2013) ...........................................2, 18

*Brown v. Rhode Island,*
  511 F. App'x 4 (1st Cir. 2013).........................................................20

*Burton v. Bd. of Regents of Univ. of Wisconsin Sys.,*
  851 F.3d 690 (7th Cir. 2017) ..............................................7

*Cloud v. Trs. of Boston Univ.,*
  720 F.2d 721 (1st Cir. 1983).........................................8, 11

*Davis v. Monroe Cty. Bd. of Educ.,*
  526 U.S. 629 (1999).........................................................5

*Dempsey v. Bucknell Univ.,*
  76 F. Supp. 3d 565 (M.D. Pa. 2015), amended in part, No. 4:11-CV-1679,
  2015 WL 999101 (M.D. Pa. Mar. 6, 2015), aff'd, 834 F.3d 457 (3d Cir. 2016)....................13

*Doe v. Amherst Coll.,*
  238 F. Supp. 3d 195 (D. Mass. 2017) ......................................................1

*Doe v. Brandeis Univ.,*
  177 F. Supp. 3d 561 (D. Mass 2016) ....................................................15

*Doe v. Case W. Reserve Univ.,*
  No. 1:14CV2044, 2015 WL 5522001 (N.D. Ohio Sept. 16, 2015) .........................................1

*Doe v. Columbia Coll. Chicago,*
  299 F. Supp. 3d 939 (N.D. Ill. 2017) ....................................................1

*Doe v. Columbia Coll. Chicago,*
  299 F. Supp. 3d at 956–57 ..............................................3

*Doe v. Cummins,*
  662 F. App'x 437 (6th Cir. 2016) ..............................................3, 4

*Doe v. D'Agostino,*
  367 F. Supp. 2d 157 (D. Mass. 2005) ..............................................6

*Doe v. Mercy Catholic Med. Ctr.*,
    850 F.3d 545 (3d Cir. 2017)..............................................................................7

*Doe v. Trs. of Boston Coll.*,
    892 F.3d 67 (1st Cir. 2018) ..............................................................1, 2, 5, 8, 18

*Doe v. Univ. of Cincinnati*,
    173 F. Supp. 3d 586 (S.D. Ohio 2016) ...............................................................3

*Doe v. Univ. of Colo.*,
    255 F. Supp. 3d 1064 (2017) ...............................................................................3

*Doe v. Univ. of the South*,
    687 F. Supp. ......................................................................................................12

*Doe v. Univ. of the South*,
    687 F. Supp. 2d. 744,755 (E.D. Tenn. 2009) ..................................................2, 3

*Doe v. W. New England Univ.*,
    228 F. Supp. 3d 154 (D. Mass. 2017) .............................................................4, 15

*Ellis v. Shelby Cnty. Land Bank Dept.*,
    548 F. App'x 320 (6th Cir. 2013) .......................................................................7

*Falat v. County of Hunterdon*,
    2014 WL 6611493 (D. N.J. Nov. 21, 2014) .......................................................7

*Fox v. Pittsburg State Univ.*,
    257 F. Supp. 3d 1112 (D. Kan. 2017) .................................................................7

*Frazier v. Fairhaven Sch. Comm.*,
    276 F.3d 52 (1st Cir. 2002) .................................................................................7

*G v. Fay Sch., Inc. by & through its Bd. of Trs.*,
    282 F. Supp. 3d 381 (D. Mass. 2017) ...............................................................17

*Gebser v. Lago Vista Indep. Sch. Dist.*,
    524 U.S. 274 (1998).......................................................................................5, 18

*Gorman v. Univ. of Rhode Island*,
    837 F.2d 7 (1st Cir. 1988) ...................................................................................9

*Haidak v. Univ. of Mass. at Amherst*,
    299 F. Supp. 3d 242 (D. Mass. 2018) ..............................................................1, 9

*Hall v. Raley's*,
    No. 3:08-CV-00632-RCJVPC, 2010 WL 55332 (D. Nev. Jan. 6, 2010)................19

*Havlik v. Johnson & Wales Univ.*,
   509 F.3d 25 (1st Cir. 2007) ........................................................................................11

*Jernigan v. Alderwoods Grp., Inc.*,
   489 F. Supp. 2d 1180 (D. Or. 2007) ...........................................................................19

*Keskinidis v. Univ. of Mass. Boston*,
   76 F. Supp. 3d 254 (D. Mass. 2014) .............................................................................6

*Kiani v. Trs. of Boston Univ.*,
   No. 04–cv–11838, 2005 WL 6489754 (D. Mass. Nov. 10, 2005) ................................8

*Lipsett v. Univ. of Puerto Rico*,
   864 F.2d 881 (1st Cir. 1988) .........................................................................................7

*Mallory v. Ohio Univ.*,
   76 F. App'x 634 (6th Cir. 2003) ................................................................................1, 4

*Moore v. Regents of the Univ. of California*,
   No. 15-CV-05779-RS, 2016 WL 2961984 (N.D. Cal. May 23, 2016) ........................18

*Pierre v. Univ. of Dayton*,
   No. 3:15-CV-362, 2017 WL 1134510 (S.D. Ohio Mar. 27, 2017) ..............................17

*Porto v. Town of Tewksbury*,
   488 F.3d 67 (1st Cir. 2007) ...........................................................................................5

*Russell v. Ohio Dept. of Admin. Servs.*,
   302 F. App'x 386 (6th Cir. 2008) .................................................................................7

*Sahm v. Miami Univ.*,
   110 F. Supp. 3d 774 (S.D. Ohio 2015) ........................................................................3

*Saldivar v. Racine*,
   818 F.3d 14 (1st Cir. 2016) .........................................................................................19

*Turley v. McKenzie*,
   No. CV 14-14755-LTS, 2018 WL 314814 (D. Mass. Jan. 5, 2018) .............................6

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
   570 U.S. 338 (2013) ......................................................................................................7

*Vicarelli v. Bus. Int'l, Inc.*,
   973 F. Supp. 241 (D. Mass. 1997) ..............................................................................19

*Walker v. Pres. & Fellows of Harvard Coll.*,
   840 F.3d 57 (1st Cir. 2016) ...........................................................................................8

*Wood v. Strickland,*
  420 U.S. 308 (1975)..................................................................................11

*Yu v. Vassar Coll.,*
  97 F. Supp. 3d 448 (S.D.N.Y. 2015)......................................................12

*Yusuf v. Vassar Coll.,*
  35 F.3d 709 (2d Cir. 1994)....................................................................1, 2

**State Cases**

*Bruchas v. Preventive Care, Inc.,*
  553 N.W.2d 440 (Minn. Ct. App. 1996)................................................19

*City of Cambridge v. Civil Serv. Comm'n,*
  43 Mass. App. Ct. 300, 682 N.E.2d 923 (1997) ...................................11

*Coveney v. Pres. & Trs. of Holy Cross Coll.,*
  388 Mass. 16, 445 N.E.2d 136 (1983) .............................................8, 11

*Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.,*
  455 Mass. 458, 918 N.E.2d 36 (2009) ..................................................19

*Doe v. Senechal,*
  66 Mass. App. Ct. 68, 845 N.E.2d 418 (2006) .....................................19

*Driscoll v. Bd. of Trs. of Milton Acad.,*
  70 Mass. App. Ct. 285, 873 N.E.2d 1177 (2007) ...............................8, 9

*FMR Corp. v. Boston Edison Co.,*
  415 Mass. 393, 613 N.E.2d 902 (1993) ................................................19

*Foster v. The Loft, Inc.,*
  26 Mass. App. Ct. 289, 526 N.E.2d 1309 (1988) .................................19

*Morris v. Brandeis Univ.,*
  No. 01-P-1673, 60 Mass. App. Ct. 1119, 2004 WL 369106 (Mass. App. Ct.
  Feb. 27, 2004) ..........................................................................................8

*Patriarca v. Ctr. for Living & Working, Inc.,*
  No. 99689B, 1999 WL 791888 (Mass. Super. Sept. 8, 1999) ...............19

*R.L. Whipple Co. v. Pondview Excavation Corp.,*
  71 Mass. App. Ct. 871, 887 N.E.2d 1095 (2008) .................................19

*Schaer v. Brandeis Univ.,*
  432 Mass. 474, 735 N.E.2d 373 (2000) ........................................8, 9, 12

*Sullivan v. Boston Architectural Ctr., Inc.*,
   57 Mass. App. Ct. 771, 786 N.E.2d 419 (2003) ....................................................................18

**Federal Statutes**

20 U.S.C. § 1232g(a)(1)(A) ...................................................................................................15

20 U.S.C. § 1232g(a)(4)(A) ...................................................................................................15

20 U.S.C. § 1681 ......................................................................................................................1

**Federal Regulations**

34 C.F.R. § 99.10 ...................................................................................................................15

**Federal Rules**

Fed. R. Evid. 602 ...................................................................................................................14

Fed. R. Evid. 701 ...................................................................................................................14

**State Statutes**

Massachusetts Equal Rights Act ..............................................................................................1

**ARGUMENT**

**I.     The College is Entitled to Summary Judgment on the Gender Discrimination Claims in Counts I and IV.**

The plaintiff John Doe claims that Williams College discriminated against him on the basis of his gender in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 (Count I), and the Massachusetts Equal Rights Act (Count IV).  In his Title IX claim, Doe contends that gender bias resulted in "selective enforcement" of the College's policies against sexual misconduct, "deliberate indifference" to his claim of harassment against Susan Smith, an "erroneous outcome" on the charge that he engaged in nonconsensual sex, and retaliation against him for making his complaint against Smith.  Compl. ¶¶ 204, 212, 218-19, 223. The Equal Rights Act claim merely incorporates these allegations by reference, *id*. ¶¶ 248-52, and accordingly fails for the same reasons as Doe's Title IX claim.

**A.     Selective Enforcement**

A student claiming selective enforcement of disciplinary policies in violation of Title IX must show that the decision to initiate a disciplinary proceeding and/or the severity of the penalty was affected by the student's gender.  *Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 222 (D. Mass. 2017) (citing *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)[1]).  To meet that burden, Doe must demonstrate that a female student in circumstances "sufficiently similar" to his was treated more favorably by the College and that gender bias was a motivating factor behind the inconsistency.  *Yusuf*, 35 F.3d at 715; *see also Mallory v. Ohio Univ.*, 76 F. App'x 634, 641 (6th Cir. 2003); *Haidak v. Univ. of Mass. at Amherst*, 299 F. Supp. 3d 242, 270 (D. Mass. 2018); *Doe v. Columbia Coll. Chicago*, 299 F. Supp. 3d 939, 957 (N.D. Ill. 2017); *Doe v. Case W. Reserve Univ.*, No. 1:14CV2044, 2015 WL 5522001, at *6 (N.D. Ohio Sept. 16, 2015).

---

[1] *See Doe v. Trs. of Boston Coll.*, 892 F.3d 67, 90 (1st Cir. 2018) (following the *Yusuf* framework where the parties agreed that it provided "the applicable standard" and noting its adoption in the Sixth Circuit).

1

Doe's claim fails because there is no evidence that a female student in similar circumstances was treated more favorably than he was.  There is no evidence that the College declined to investigate any claim that a female student had engaged in nonconsensual sexual intercourse, nor any evidence that a female student found responsible for such misconduct – much less a female student with a disciplinary history similar to Doe's – was not expelled.

The alleged fact that "female students at Williams rarely if ever face charges of sexual misconduct" (Compl. ¶ 225) does not indicate any gender bias.  *Doe v. Trs. of Boston Coll.*, 892 F.3d at 92 (the gender of students accused of sexual assault "is the result of what is reported" to the college).  Nor is Doe's selective enforcement claim saved by his unsubstantiated allegation that male students at Williams "invariably lose" sexual harassment cases (Compl. ¶ 205), which is demonstrably incorrect; from 2011 to 2016, roughly 20% of the men accused of sexual assault were found ***not*** responsible.  Facts ¶ 179.  *See Bleiler v. College of Holy Cross*, No. 11-11541, 2013 WL 4714340, *8 (D. Mass. Aug. 26, 2013) (fact that one third of male students accused of sex assault were found not responsible precludes a finding of gender bias).

## B.     Erroneous Outcome

A student claiming an erroneous outcome in violation of Title IX must show that in fact he was innocent but wrongly found to have committed an offense and that gender was a motivating factor in the erroneous finding.  *Yusuf*, 35 F.3d at 715.  Doe can show neither.

Doe cannot show that he was wrongly found responsible for engaging in nonconsensual sex.  While he disagrees with the panel's conclusion, there was ample evidence from which the panel reasonably could make the finding that it did, as discussed in Section II.B. below.  Where that is the case, a student disappointed in the outcome does not get a *de novo* rehearing in court. *Doe v. Univ. of the South*, 687 F. Supp. 2d. 744,755 (E.D. Tenn. 2009) (it is not for the court reviewing a claim of gender bias to determine "whether a sexual assault occurred, whether any

such acts were consensual, or who, as between John Doe and the Complainant is credible").

Moreover, even if there was some basis to conclude that the panel in Doe's case erred in finding that he engaged in nonconsensual sex, Doe cannot show that gender was a motivating factor in the panel's decision. In fact, Doe admitted in his first deposition in this case that he did not believe the College discriminated against him based on his gender. Facts ¶ 168.

Doe "corrected" that answer in connection with his review of the deposition transcript, *id.* ¶ 169, but the evidence still fails to support his erroneous outcome claim. When Doe was deposed a second time, to explain this and other "corrections" to his testimony, he identified just two College administrators who he claimed were biased against him – the Dean of the College, Sarah Bolton, who supported Smith when she earlier reported being in a troubled relationship with Doe, and the College's Director of Sexual Assault Prevention and Response, Meagan Bossong, whom Smith had chosen to be her "support person" during the disciplinary proceeding. *Id. ¶¶* 170-174. Doe claimed these administrators were biased against him because of their relationships with Smith, in which they supported her as an alleged victim of Doe's misconduct. *Id.* Doe, however, has no evidence that these administrators were biased against him because of his gender. Alleged bias in favor of claimed victims of sexual misconduct and against alleged perpetrators does not equate to bias on the basis of gender, as both men and women can be victims or perpetrators of such conduct. *Doe v. Cummins*, 662 F. App'x 437, 453 (6th Cir. 2016); *Doe v. Columbia Coll. Chicago*, 299 F. Supp. 3d at 956–57; *Doe v. Univ. of Colo.*, 255 F. Supp. 3d 1064, 1078 (2017); *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 606–07 (S.D. Ohio 2016); *Sahm v. Miami Univ.*, 110 F. Supp. 3d 774, 778 (S.D. Ohio 2015).

Moreover, there is no evidence that Dean Bolton or Ms. Bossong influenced the outcome of Doe's case in any event. Neither of them played any role in investigating the complaints that

Smith and Doe asserted against each other – that was done by an outside lawyer.  Facts ¶ 59.

Neither of them served on the panel that decided the case – in fact, Dean Bolton had left the

College by that time to become the President of another college.  *Id.* ¶ 172.  And Doe admittedly

has no evidence that Dean Bolton or Ms. Bossong sought to influence the panel's decision.  *Id.*

¶¶ 172-176.

For this reason, Doe's claims that Dean Bolton allegedly exhibited favoritism toward

Smith in other contexts – such as allegedly sharing information with Smith about the honor code

proceeding against Doe, encouraging Smith to get a no-contact order against Doe, and allowing

Smith rather than Doe to participate in a dance event (Compl. ¶¶ 219, 222a-f) – is irrelevant.  To

be actionable under Title IX, allegations of bias must pertain to persons involved in the

disciplinary proceeding at issue, *see Doe v. W. New England Univ.*, 228 F. Supp. 3d 154, 188-

189 (D. Mass. 2017) (citing *Mallory*, 76 Fed. App'x at 640), and it is undisputed that Dean

Bolton played no role in finding Doe responsible for engaging in nonconsensual sex.

Doe admittedly has no evidence that the panel was biased against him because of his

gender.  Facts ¶ 178.  He cites no statement or action by any of them which indicates any bias

against men generally or against men accused of sexual misconduct.  Nor is there any evidence

from which such a bias could be inferred.  A majority of the panel that decided his case were

men.  *Id.* ¶ 110.  The panel also found in Doe's favor on Smith's claim that Doe engaged in

relationship abuse and on Doe's claim that Smith assaulted him by slapping him, which

precludes a finding of gender bias against Doe.  *See Doe v. Cummins*, 662 F. App'x 437, 453-54

(6th Cir. 2016) (claim that panel was biased against male student was "untenable" where panel

found in his favor on one of the claims against him).

Simply put, Doe's claim of gender bias is based on nothing more than speculation and his

dissatisfaction with the outcome of his case.  College hearing panels are presumed to be impartial and the party seeking to rebut that presumption has the burden to show bias that is "evident from the record and [not] based in speculation or inference." *Doe v. Trs. of Boston Coll.*, 892 F.3d at 84 (citations and internal quotations omitted).

### C.    Deliberate Indifference

"To succeed on a Title IX deliberate indifference claim, a plaintiff must show that an official with authority to implement corrective measures was aware of and deliberately indifferent to an act of discrimination on the basis of sex." *Doe v. Trs. of Boston Coll.,* 892 F.3d at 93 (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998).  Deliberate indifference to sexual harassment means that one or more such officials had actual notice of the sexual harassment and "either did nothing or failed to take additional reasonable measures after [the institution] learned that its initial remedies were ineffective." *Porto v. Town of Tewksbury*, 488 F.3d 67, 74 (1st Cir. 2007).  To be actionable the deliberate indifference also must cause the plaintiff to undergo further sexual harassment or make him vulnerable to it.  *Davis v. Monroe Cty. Bd. of Educ.,* 526 U.S. 629, 630 (1999).  There is no such evidence in this case.

Doe contends the College exhibited indifference when Dean Bolton took no action "for over one month" after receiving a blind copy of his attorney's March 13, 2016 letter to Smith, which accused Smith of harassing Doe and alluded to a "battery upon [Doe]" in December 2015. Compl. ¶¶ 67, 212-16.  The claim fails because the letter from Doe's attorney was not addressed to the College; it did not allege *sexual* harassment; it did not request that the College begin an investigation or take any other action; and – most importantly – Doe admitted that he did not expect Dean Bolton to take any action as a result of receiving it.  Facts ¶ 39; Tab 25.  Moreover, when Doe and his attorney met with Dean Bolton the next day, Doe again made no indication that he intended to file a complaint against Smith, nor did he ask the College to conduct an

investigation or take any other action against Smith.  *Id.* ¶¶ 40-43.  Doe never asked or expected

the College to take action until April 13, 2016, when he sent a letter to the College's Title IX

Coordinator, Toya Camacho.  *Id.* ¶ 48.

When Doe finally did bring forward a complaint of harassment and assault by Smith, the

undisputed evidence demonstrates that the College responded appropriately:  rather than "doing

nothing," it promptly initiated a thorough investigation, which resulted in a finding that Smith

was responsible for slapping Doe.  Facts ¶¶ 52, 55, 59, 62; Tab 42.  There also is no evidence

that the College's response to Doe's complaint was "ineffective," thereby subjecting Doe to

further harassment.  To the contrary, Doe does not allege, much less offer any evidence to show,

that he was subjected to any further harassment by Smith.  The evidence thus cannot support a

finding of deliberate indifference in response to Doe's complaints of harassment and assault by

Smith.  *See Turley v. McKenzie*, No. CV 14-14755-LTS, 2018 WL 314814, at *11 (D. Mass. Jan.

5, 2018); *Keskinidis v. Univ. of Mass. Boston*, 76 F. Supp. 3d 254, 260, n.3 (D. Mass. 2014); *Doe

v. D'Agostino*, 367 F. Supp. 2d 157, 167 (D. Mass. 2005).

Nor is there any merit to Doe's claim that gender bias is evidenced by the fact that the

College allegedly responded more quickly to Smith's complaint against him. The undisputed

evidence is to the contrary.  Just as Doe initially indicated no desire to move forward with a

complaint, the same was true of Smith; she had been talking to the Dean's office about her

troubled relationship with Doe, including his emotionally abusive behavior, long before she

decided to file a complaint. Facts ¶¶ 26-31. When she was ready to assert a complaint, the

College promptly began to investigate it, *id.* ¶ 53, just as it did with Doe.

### D.    Retaliation

To establish unlawful retaliation under Title IX, Doe must demonstrate that he engaged in

a statutorily protected activity and that the College took a materially adverse action against him,

6

which it would not have taken but for the protected activity. *Burton v. Bd. of Regents of Univ. of Wisconsin Sys.*, 851 F.3d 690, 695 (7th Cir. 2017); *see also See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 348 (2013); *Baldwin v. New York State, State Univ. of New York, Coll. at Buffalo*, 690 F. App'x 694, 697 (2d Cir. 2017); *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 67 (1st Cir. 2002). Doe engaged in protected activity when he made his complaint against Smith in April 2016. He claims that the College retaliated against him for having made that complaint when it investigated the complaint Smith made against him the following month. Compl. ¶ 218.

It is self-evident that the College's investigation of Smith's complaint was not an act of unlawful retaliation. The investigation of a complaint of misconduct is not, by itself, an "adverse action." *See Ellis v. Shelby Cnty. Land Bank Dept.*, 548 F. App'x 320, 332 (6th Cir. 2013); *Russell v. Ohio Dept. of Admin. Servs.*, 302 F. App'x 386, 393 (6th Cir. 2008); *Falat v. County of Hunterdon*, 2014 WL 6611493, at *10 (D. N.J. Nov. 21, 2014).

Nor is there any merit to Doe's argument that the College had no basis to investigate Smith's complaint, which is based on his mistaken belief that Title IX applies only to students and not to employees – the status Smith had when she made her complaint against Doe. Compl. ¶¶ 83-84. Title IX prohibits sexual discrimination, including sexual violence and sexual harassment, against employees as well as students. *See Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 562 (3d Cir. 2017); *Fox v. Pittsburg State Univ.*, 257 F. Supp. 3d 1112, 1123 (D. Kan. 2017); *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 897 (1st Cir. 1988). Moreover, even if Title IX did not apply to Smith, the College's own policies did. Those policies, as one would expect, protect all members of the College community against sexual harassment and sexual violence. Facts ¶ 9; Tab 1, Comp. Ex. P-9 at 4-5. Smith thus had every right to assert her complaint against Doe and once she did, the College had every legitimate reason – indeed it had

the obligation – to investigate it.  Doing so was not an act of retaliation against Doe.

II.     **The College is Entitled to Summary Judgment on the Breach of Contract and Fundamental Fairness Claims in Counts II and VI.**

Counts II and VI allege that the College breached its contractual obligations to Doe because the investigation and adjudication of Doe's and Smith's complaints were not in accordance with the College's own policies and did not afford Doe basic fairness.  Compl. ¶¶ 229-42, 263.  The College has a contractual obligation to substantially follow its conduct policies and procedures, as it would reasonably expect a student to understand them; to conduct its procedures with "basic fairness," which means providing the student with notice of the charge against him and a meaningful opportunity to respond; and to reach a decision that has some rational basis, *i.e.*, one that is not arbitrary and capricious.  *See Walker v. Pres. & Fellows of Harvard Coll.*, 840 F.3d 57, 62 (1st Cir. 2016); *Cloud v. Trs. of Boston Univ.*, 720 F.2d 721, 724 (1st Cir. 1983); *Schaer v. Brandeis Univ.*, 432 Mass. 474, 478, 735 N.E.2d 373, 378 (2000); *Coveney v. Pres. & Trs. of Holy Cross Coll.*, 388 Mass. 16, 19, 445 N.E.2d 136, 138-39 (1983); *see also Doe v. Trs. of Boston Coll.*, 892 F.3d at 88 (obligation of fundamental fairness in student conduct proceedings is defined by the parties' contractual relationship).  Where, as in this case, the disciplinary process meets that test, the outcome is not subject to judicial challenge.

A.     **The Proceedings Were Conducted with Basic Fairness.**

Student disciplinary proceedings are conducted with basic fairness if the student has notice of the allegation against him and an opportunity to be heard, *i.e.*, to present his version of events and offer supporting evidence.  *Cloud*, 720 F.2d at 725; *Kiani v. Trs. of Boston Univ.*, No. 04–cv–11838, 2005 WL 6489754, at *8 (D. Mass. Nov. 10, 2005); *Schaer*, 432 Mass. at 481, 735 N.E.2d at 381; *Driscoll v. Bd. of Trs. of Milton Acad.*, 70 Mass. App. Ct. 285, 295, 873 N.E.2d 1177, 1187 (2007); *Morris v. Brandeis Univ.*, No. 01-P-1673, 60 Mass. App. Ct. 1119,

2004 WL 369106, *2 (Mass. App. Ct. Feb. 27, 2004).  A private college or university is not

required to provide constitutional due process or an adversarial hearing.  *See Schaer*, 432 Mass.

at 482, 735 N.E.2d at 381; *Driscoll*, 70 Mass. App. Ct. at 294, 873 N.E.2d at 1186.  Nor is it

required to provide the right to confront or cross-examine witnesses.  *Haidak*, 299 F. Supp. 3d at

266 (citing *Gorman v. Univ. of Rhode Island*, 837 F.2d 7, 16 (1st Cir. 1988)).

      Doe was afforded a process which easily meets the test of fundamental fairness.  The

College initially notified him of Smith's complaint that he had engaged in abusive behavior

toward her during the preceding two years and informed him that the allegation would be

investigated in accordance with the College's sexual misconduct policy.  Facts ¶¶ 56-57.  When

Smith told the investigator that Doe also had sexually assaulted her, the investigator informed

Doe of this additional allegation, read him a summary of Smith's complaint, informed him of the

details of Smith's allegations, and afforded him the opportunity to respond.  *Id.* ¶¶ 77-79.  In

addition to telling the investigator his side of the story, Doe had the opportunity to present any

other evidence he felt was relevant, and identify other witnesses for the investigator to interview

and questions for the investigator to ask these witnesses and Smith.  *Id.* ¶¶ 79, 82, 83, 94.  Doe

also had the right to consult with his attorney, who actively participated throughout the process.

*Id.* ¶¶ 163-167.

      The investigator prepared a comprehensive report, of 40 single-spaced pages, which

attached copies of all the evidence she reviewed.  ¶ Tab 35-36.  Doe received a copy of the report

and had the opportunity to respond in writing before it was submitted to the panel.  *Id.*  With the

help of his attorney, Doe submitted a 24-page response, which included his account of the events

at issue and detailed arguments as to why he should not be found responsible for sexual

misconduct.  Facts  ¶¶ 95-96.  Doe also received a copy of Smith's response to the investigator's

report and had the opportunity to respond in writing to that, which he did.  *Id.* ¶¶ 97-98.

The determination whether Doe or Smith had violated the College's policies was made by a panel of three College administrators, who were trained and experienced in sexual misconduct cases.  *Id.* ¶ 110-118.  They carefully reviewed the investigator's report and its exhibits, along with Doe's and Smith's responses, and met to deliberate on the question whether the evidence supported a finding against Doe or Smith.  *Id.* ¶ 119-125.  The panel applied the College's "preponderance of the evidence" standard in making its findings.  *Id.* ¶ 126.

Doe was informed of the findings and invited to appear before the panel in connection with its determination on sanctions.  *Id.* ¶ 136-137.  It was only at this point that the panel was informed of Doe's prior conduct violations and discipline.  *Id.* ¶ 139.  Doe declined to appear. *Id.* ¶ 138. The panel determined that in light of the seriousness of the offense and Doe's disciplinary record – which included a prior suspension for nonconsensual sexual intercourse as well as an academic honor code violation – he should be dismissed from the College. *Id.* ¶ 141.

Doe was afforded, and he exercised, the right to appeal the panel's findings.  *Id.* ¶ 143. His appeal was allowed on the grounds that the investigator and the panel had focused on a version of the College's sexual assault policy as it had been amended shortly after the incident involving Doe and Smith.  *Id.* ¶¶ 146-147.  Although, as discussed below, the amendments merely clarified without substantively changing the policy, the case was remanded for the panel to reconsider the evidence in light of the correct version of the policy.  *Id.* ¶ 148.  The panel did so, finding again that Doe engaged in sexual intercourse without "effective consent." *Id.* ¶ 149-154.  This investigation and disciplinary process easily meets the test of basic or fundamental fairness.

Nor is there any merit to Doe's argument that the College's "affirmative consent" policy

is fundamentally unfair.  Compl. ¶ 266.  There is nothing inherently unfair about prohibiting students from engaging in sexual conduct without "effective consent" – words or conduct on the part of the other person which indicate consent to the sexual activity.  Moreover, even assuming the Court believed some different definition of consent would be better, that would not support a finding in Doe's favor.  A private college is given broad discretion in fashioning its policies, including its code of conduct, and it is not the role of federal courts to set those policy judgments aside on the basis that the court deems them unwise.  *Havlik v. Johnson & Wales Univ.*, 509 F.3d 25, 35 (1st Cir. 2007) (quoting *Wood v. Strickland*, 420 U.S. 308, 326 (1975)).

### B.    The Panel's Decision Was Not Arbitrary and Capricious.

"A decision is arbitrary and capricious when it lacks any rational explanation that reasonable persons might support."  *City of Cambridge v. Civil Serv. Comm'n*, 43 Mass. App. Ct. 300, 303, 682 N.E.2d 923, 925 (1997).  Where there are any "reasonable grounds" to support the finding of a college disciplinary board, it "will not be subject to successful challenge in the courts."  *Cloud*, 720 F.2d at 724 (quoting *Coveney*, 388 Mass. at 19, 445 N.E.2d at 139 (1983)).

The panel's decision in this case had a fully "rational explanation," which was supported by "reasonable grounds."  The College's sexual misconduct policy prohibits sexual activity without "effective consent," which "means that at the time of the sexual contact, words or conduct indicate freely given approval or agreement … by both participants … ."  Facts ¶¶ 11, 13.  Smith stated that she gave no such approval or agreement, as she had told at least three witnesses.  *Id*. ¶¶ 65-67.[2]  To the contrary, Smith stated that while she was lying face down in bed, Doe forced himself on her, penetrating her from behind; she gave no indication she wanted

---

[2] Doe alleges that Smith groomed these witnesses. Compl. ¶¶ 130g. There is no such evidence. Notably, the investigative report notes that Smith told one of the witnesses about the nonconsensual sex in the spring of 2015, before the breakdown in the relationship between Doe and Smith in December 2015 – *i.e.*, before Smith would have had any motive to manufacture a story about Doe and "groom" a supporting witness. Facts ¶ 66. In any event, what weight to give these witness accounts was for the panel to decide.

to have sex, whereas she and Doe always talked about having sex before beginning any sexual activity; she was not lubricated, it hurt, and she was crying; she could not move out from under Doe, who had his hands on her shoulders; and she bled after the encounter. *Id.* ¶ 65.  While Doe denied that he acted without Smith's consent, ultimately the panel found her account to be credible. *Id.* ¶ 125.  Such credibility determinations are not for a court to second-guess. *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 462 (S.D.N.Y. 2015); *Doe v. Univ. of the South*, 687 F. Supp. at 755; *see also Schaer*, 432 Mass. at 479 n.9, 735 N.E.2d at 379 n.9 (rejecting student's contract claim where "[t]here was ample evidence which, if believed, could have supported the board's decision").

Significantly, Doe offered no evidence that Smith "indicated" consent "by words or conduct," as the College's policy requires.  Instead, he argued that the panel could not properly infer the ***absence*** of consent based merely on the fact that the sex occurred in a position "unusual" for Doe and Smith to start in and the panel's conclusion that the sex was "rough." Compl. ¶ 175.  That argument depends on ignoring the actual facts of the case.  Doe admitted that he and Smith never began sexual activity with him penetrating her from behind, Facts ¶ 65, and the facts recited just above amply supported the panel's finding that the sex was "rough." Doe's argument also ignores the very crux of the College's policy on consensual sex, which requires affirmative communication of consent.  Only "yes" means "yes."  Not saying "no" does not mean "yes."  There was simply no evidence that Smith indicated consent by words or conduct.

### C.    The College Followed its Policies and Procedures.

Doe's Complaint alleges a litany of supposed procedural violations, Compl. ¶ 237a-o, none of which has merit.  As to each issue, there is no evidence that the College failed to follow its procedures as it reasonably would expect Doe to understand them.

## 1.     There is no evidence of bias or disparate treatment.

The College's sexual misconduct policy calls for a "prompt, fair, and impartial investigation and resolution" of sexual misconduct complaints. Tab 1, Compl. Ex. P-9 at 12. Doe alleges that the College did not adhere to this policy because he was subjected to a disciplinary process which was biased in favor of females; he was treated in a "highly disparate manner"; and the College's disciplinary panels were trained to favor privileged students and to prioritize the College's reputation.  Compl. ¶¶ 228a, c, n.

Doe's conclusory allegations of bias and disparate treatment fail to create a triable issue of fact for the reasons discussed in Section I above.  Most of Doe's allegations of bias involve Dean Bolton's communications with Smith during the separate honor code proceedings that arose from Smith's report that Doe had enlisted her to write papers for his Spanish classes – proceedings in which Doe ultimately was exonerated.  Facts ¶ 50.  Putting aside the fact that Dean Bolton's communications with Smith were not improper in any event,[3] they cannot support a breach of contract claim in relation to the entirely separate proceeding in which Doe was found responsible for sexual misconduct.  *See Dempsey v. Bucknell Univ.*, 76 F. Supp. 3d 565, 585 (M.D. Pa. 2015), amended in part, No. 4:11-CV-1679, 2015 WL 999101 (M.D. Pa. Mar. 6, 2015), aff'd, 834 F.3d 457 (3d Cir. 2016) (alleged defects in a proceeding in which a student was exonerated were inapplicable to breach of contract claims with respect to a separate proceeding). Moreover, as explained in Section I above, Dean Bolton in any event had no role in the outcome of Doe's sexual misconduct case, which was decided after she had left the College.

Doe's allegation that that the College trained its panel members to favor privileged

---

[3] The College's honor code procedures contemplate that the Dean will provide relevant information to the hearing committee; that the Dean's office will be available to assist witnesses such as Smith; and that, as the accuser, Smith was entitled to know the outcome of the case. Facts ¶ 34; Tab 1, Compl. Ex. P-5.

students and to prioritize the College's reputation in sexual misconduct cases also fails to create a triable issue of fact. Compl. ¶237n. As support for these absurd claims, Doe cites the hearsay statements of a former College employee, Brian Marquis, who claims to have attended a training session for sexual misconduct panel members and to have served on sexual misconduct panels. He allegedly believes that the primary focus of the training is "to consider the College's reputation before anything else when adjudicating sexual misconduct cases," and that the College "treats people according to perceived pedigree and importance." Compl. ¶¶ 17-21. These unsupported statements of belief are not based on personal knowledge and are inadmissible. *See* Fed. R. Evid. 602, 701. There is no evidence that the panelists in this case received any such training – in fact, they each denied it. Facts ¶ 117. Nor is there any evidence that in deciding this case the panel gave any consideration to the College's reputation or the relative "pedigrees" of Doe and Smith; in fact, Doe admits that he and Smith are of similar socioeconomic backgrounds. *Id.* ¶ 180.

**2.      Title IX and College policy called for the investigation of Smith's complaint.**

Doe alleges that the College acted improperly by investigating and adjudicating Smith's complaint of sexual misconduct because she was an employee when she made the complaint and because there was inadequate evidence to proceed. Compl. ¶ 237b. Neither claim has merit.

As discussed in Section I above, both Title IX and College policy protect all members of the College community from gender discrimination including sexual harassment and sexual violence. Doe's contrary position is absurd. If correct, it would mean that Williams students can sexually assault or harass College employees with impunity; it would mean that if an employee complains of such misconduct, the College must be deliberately indifferent to the complaint. Exactly the opposite is true. Moreover, Doe specifically agreed that Smith's complaint could be

adjudicated together with his complaint even though she was an employee at the time she made her complaint against him.  Facts ¶¶ 107-108.

Nor did the College's policies give Doe any "reasonable expectation" that some different or additional evidence was needed for the College to investigate Smith's complaint.  Those policies contain no "probable cause" standard or the like, nor do they require any "threshold evaluation" prior to commencing an investigation. Tab 1, Compl. Ex. P-9 at 12-16.

### 3. The College did not breach any obligation to provide transcripts.

Doe complains that the College failed to comply with his request for transcripts of the investigator's witness interviews.  Compl. ¶ 237g.  Nothing in the applicable policy provides that respondents in sexual misconduct cases are entitled to interview transcripts.  Tab 1, Compl. Ex. P-9 at 12-16. The College informed Doe's counsel that although Doe had no right to receive copies of the transcripts, he could make a request pursuant to the Family Educational Rights and Privacy Act (FERPA) to inspect them.  FERPA generally permits students to "inspect and review," but not to receive copies of, records "maintained" by an educational institution which "directly relate" to the student.  *See* 20 U.S.C. § 1232g(a)(1)(A), (a)(4)(A); 34 C.F.R. § 99.10; *see also Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 598 n.26 (D. Mass 2016); *Doe v. W. New England Univ*., 228 F. Supp. 3d at 177.  Protecting the confidentiality of sexual misconduct proceedings in this manner is consistent not only with FERPA but also College policy; as a result, Doe could not "reasonably expect" that he had a right to receive copies of the transcripts. Nor has he identified any harm resulting from the fact that he only could inspect the transcripts and not get copies.[4]

---

[4] When Doe's counsel made the FERPA request on December 4, 2016, the College timely made them available for review.  Facts ¶¶ 160-161.  Doe's counsel waited over a month to arrange to review them.  *Id.* ¶ 162.

### 4. The Panel applied the correct standards in determining whether Doe engaged in nonconsensual sexual intercourse.

Doe alleges that the College violated its policies by failing to apply the preponderance of the evidence standard; by failing to apply the correct version of its policy on nonconsensual sexual intercourse; and by finding Doe responsible without adequate evidence, based on the "mere credibility" of Smith's account.  Compl. ¶¶ 237k, o.  None of these claims has merit.

On the first issue, it is beyond dispute that the panel applied the correct, preponderance of the evidence standard in making its findings.  Facts ¶ 126; Tab 42.

Also without merit is Doe's claim that the College erred by applying the wrong version of its consent policy.  The incident at issue occurred on September 1, 2014.  At that time and subsequent thereto, the College's sexual misconduct policy required "effective consent," which means "words or conduct [that] indicate freely given approval or agreement."  Facts ¶¶ 11, 13. In October 2014 the policy was amended to clarify that this "effective consent" language, which remained in the policy, also means "affirmative consent." *Id*. ¶¶ 12-13.  The panel originally decided the case with the newer version of the policy at hand. *Id*. ¶¶ 90, 135.  After Doe's appeal was granted, the panel reconsidered the evidence in light of the policy language that was in effect in September 2014. *Id*. ¶¶ 152-154.[5]  Not surprisingly, as the substance of the policy never changed, the panel again found that Doe engaged in sexual intercourse without "effective consent." *Id*.

Also without merit is Doe's claim that the College violated his contractual rights because the panel based its finding on the "mere credibility" of Smith's account.  As discussed in Section

---

[5] That Doe's appeal was granted belies his allegation that the appeal process was a "sham."  Compl. ¶ 237l.  That Doe's appeal was allowed only as to a procedural issue was consistent with College policy, which provides for appeals only to address procedural irregularities or new evidence not available at the time of the original decision, of which there was none in this case.  Facts ¶ 17.  Moreover, the undisputed evidence is that the panelists carefully considered the evidence in light of the correct policy on remand rather than merely rubber-stamping their original decision. *Id*. ¶¶ 149-154.

II.B. above, there was ample evidence to support the panel's determination, including not only the credibility of Smith's account but also the complete absence of any evidence that Smith used any words or conduct to indicate consent.

> **5.      The College did not retaliate or facilitate retaliation by adjudicating Smith's complaint.**

Doe alleges that the College retaliated against him and facilitated Smith's retaliation against him in relation to her complaint against Doe, which was contrary to College policy. Compl. ¶ 237m.  Doe's claim that the College retaliated against him fails for the reasons stated in Section I.D., above.  Doe's claim that Smith retaliated against him was addressed in the underlying case, but the panel found insufficient evidence to support it.  Facts ¶ 130; Tab 42. Doe's breach of contract claim on this point evidences no violation of College policy, only his disagreement with the panel's conclusion.

> **6.      The College did not violate any contractual obligation as to timing.**

Doe alleges that the College failed to adjudicate his case in accordance with its written timelines and Title IX's requirement that complaints be investigated and resolved in a manner that is "prompt."  Compl. ¶ 237i.  The College provided Doe with the "approximate time" that certain events would take place during a disciplinary proceeding.  Facts ¶ 56; Tab 1, Compl. Ex. P-9 at 1.  These are not contractual obligations.  *See Pierre v. Univ. of Dayton*, No. 3:15-CV-362, 2017 WL 1134510, at *6 (S.D. Ohio Mar. 27, 2017); *G v. Fay Sch., Inc. by & through its Bd. of Trs.*, 282 F. Supp. 3d 381, 399 (D. Mass. 2017).  Even if they were, the timelines allow for flexibility in more complex cases such as this one; they provide that the amount of time it will take to receive the investigator's report will vary "depending on the number of witnesses to be interviewed or other evidence to be compiled."  Tab 1, Compl. Ex. P-9 at 1.  Thus, there was no violation of College policy.

Doe's claim that the College violated Title IX's procedural requirements fails because those requirements do not give rise to a private right of action.  *See Gebser*, 524 U.S. at 291-92; *Moore v. Regents of the Univ. of California*, No. 15-CV-05779-RS, 2016 WL 2961984, at *5 (N.D. Cal. May 23, 2016).

## III.     The College is Entitled to Summary Judgment on Count III – Implied Covenant of Good Faith and Fair Dealing

Doe claims that the College breached the covenant of good faith and fair dealing that is implied in his contractual relationship with the College based on the College's alleged "covert prioritization of its reputation ahead of fair and impartial disciplinary hearings," Compl. ¶ 245, a claim which fails for the reasons discussed in Section II.C.1 above.  He also asserts a breach of the implied covenant based upon the College's "nefarious employment of a non-existent sexual misconduct policy," *Id.* ¶ 246, which is nonsensical.  This entire case is about Doe's expulsion for having violated the College's entirely "existent" sexual misconduct policy – for the second time.  Where, as here, a college meets is contractual obligations in relation to student conduct proceedings, a claim for breach of the implied covenant of good faith and fair dealing must fail. *See Bleiler,* 2013 WL 4714340, at *17; *Sullivan v. Boston Architectural Ctr., Inc.*, 57 Mass. App. Ct. 771, 774, 786 N.E.2d 419, 421 (2003).

## IV.     The College is Entitled to Summary Judgment on the Negligence Claim in Count V.

Doe alleges that the College was negligent in investigating and adjudicating his disciplinary case and in training and supervising Dean Bolton and her successor as Dean of the College, Marlene Sandstrom.  Compl. ¶¶ 254, 259.

With respect to the handling of Doe's disciplinary case, his negligence claim fails because the College does not owe him any duty other than those arising from the parties' contractual relationship.  *Doe v. Trs. of Boston Coll.*, 892 F.3d at 94.

Doe's claim for negligent training and supervision also fails.  An employer is liable for failure to exercise reasonable care in retaining and supervising an employee only when the employer knows or should know of problems with the employee that indicate her unfitness for her position and the employer fails to take action, thereby exposing third parties to an unreasonable risk of physical harm.  *Foster v. The Loft, Inc.*, 26 Mass. App. Ct. 289, 289-91, 526 N.E.2d 1309, 1311 (1988); *see also Saldivar v. Racine*, 818 F.3d 14, 21 (1st Cir. 2016); *Vicarelli v. Bus. Int'l, Inc.*, 973 F. Supp. 241, 246 (D. Mass. 1997).  Doe's claim fails because there is no evidence of unfitness on the part of Deans Bolton or Sandstrom and in any event the case does not involve physical injury or the threat of physical injury.  *See Doe v. Senechal*, 66 Mass. App. Ct. 68, 76, 845 N.E.2d 418, 425 (2006); *see also Hall v. Raley's*, No. 3:08-CV-00632-RCJVPC, 2010 WL 55332, at *9 (D. Nev. Jan. 6, 2010); *Jernigan v. Alderwoods Grp., Inc.*, 489 F. Supp. 2d 1180, 1204 (D. Or. 2007); *Bruchas v. Preventive Care, Inc.*, 553 N.W.2d 440, 443 (Minn. Ct. App. 1996).

Because Doe has not suffered any physical injury or property damage, his claim also is barred by the economic loss doctrine.  *Patriarca v. Ctr. for Living & Working, Inc.*, No. 99689B, 1999 WL 791888, at *5, n.6 (Mass. Super. Sept. 8, 1999) (economic loss doctrine applied to negligent supervision and retention claim); *see also Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 469, 918 N.E.2d 36, 46 (2009); *FMR Corp. v. Boston Edison Co.*, 415 Mass. 393, 395, 613 N.E.2d 902, 903 (1993); *R.L. Whipple Co. v. Pondview Excavation Corp.*, 71 Mass. App. Ct. 871, 873, 887 N.E.2d 1095, 1097 (2008).

## V.     Doe Has No Claim for Declaratory or Injunctive Relief

The claim for declaratory and injunctive relief in Count X (which should be numbered VII) fails because Doe cannot prove a violation of any legal right, for the reasons set forth above.

*See Brown v. Rhode Island,* 511 F. App'x 4, 6 (1st Cir. 2013).

## CONCLUSION

The College's Motion for Summary Judgment should be allowed.

WILLIAMS COLLEGE,

/s/ Elizabeth H. Kelly
Daryl J. Lapp (BBO No. 554980)
    daryl.lapp@lockelord.com
Elizabeth H. Kelly (BBO No. 672277)
    liz.kelly@lockelord.com
LOCKE LORD LLP
111 Huntington Avenue
Boston, MA 02199
October 1, 2018                              617.230.0100

### Certificate of Service

This document was served electronically upon all counsel of record by filing through the ECF system on October 1, 2018.

/s/ Elizabeth H. Kelly
Elizabeth H. Kelly

AM 69468866.3